UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEREK ATWATER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 1:22-cv-01669-JMS-MG |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**ORDER DENYING MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255
AND DENYING CERTIFICATE OF APPEALABILITY**

This matter is before the Court on Petitioner Derek Atwater's motion for relief pursuant to 28 U.S.C. § 2255. Dkt. 1. For the reasons explained in this Order, Mr. Atwater's motion is **denied** without the necessity of an evidentiary hearing to resolve disputed factual issues and the action is **dismissed with prejudice.** In addition, the Court finds that a certificate of appealability shall not issue**.**

**I. The § 2255 Motion**

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th

1

Cir. 2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)).

Not every petitioner who seeks relief pursuant to § 2255 is entitled to an evidentiary hearing. *Cooper v. United States*, 378 F.3d 638, 641–42 (7th Cir. 2004). A hearing is unnecessary when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A district court "need not hold an evidentiary hearing 'if the petitioner makes allegations that are vague, conclusory, or palpably incredible, rather than detailed and specific.'" *Boulb v. United States*, 818 F.3d 334, 339 (7th Cir. 2016) (quoting *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001)). A court should conduct an evidentiary hearing "when the petitioner alleges facts that, if proven, would entitle him to relief." *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009) (quotation marks omitted).

## II. Factual and Procedural Background

In 2017, the government was investigating a large-scale methamphetamine dealing operation in Indianapolis, led by Richard Grundy, which was known as the "Grundy network." In November 2017, a magistrate signed a search warrant for Mr. Atwater's and others' homes. *United States v. Carroll et al.*, No. 1:17-cr-00222-JMS-TAB,[1] dkt. 774-1. In part, as to Mr. Atwater, the probable cause affidavit relied on wiretapped phone calls between Mr. Atwater and David Carroll, occurring on at least four occasions in August 2017, in which the two discussed Mr. Atwater arranging to obtain drugs from Mr. Carroll, a wholesaler in the Grundy network. Crim. Dkt. 774-2, ¶¶ 44-45, 60-61, 74-76, 81. The search warrant tied Mr. Atwater to a particular residence through public records and other information. *Id.* at ¶ 218. Finally, the affiant stated that drug dealers generally keep indicia of drug dealing at their residences. *Id.* at ¶ 193. The warrant was executed

---

[1] Hereinafter, "Crim. Dkt."

on November 17, 2017. Crim. Dkt. 1068 ¶ 17. FBI agents seized 13.91 grams (about one-half ounce) of methamphetamine, two digital scales, over $4,000 in cash, and documents and other items connecting Mr. Atwater to the residence. *Id.*

Ultimately, Mr. Atwater and twenty-one others were charged by superseding indictment with numerous charges related to the Grundy network dealing operation. Crim. Dkt. 280. Mr. Atwater specifically was charged with conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846; possession of 50 or more grams of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1); and possession of a mixture or substance containing a detectable amount of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). *Id.* at pp. 2, 14-15, 20. The Court appointed attorney Joshua Moudy to represent Mr. Atwater. Crim. Dkt. 141.

The cases of Mr. Atwater, Mr. Grundy, James Beasley, Undrae Moseby, and Ezell Neville proceeded to a joint trial, while the other co-defendants pled guilty. *See, e.g.*, Crim. Dkt. 834. Trial of this cause presented significant logistical and security challenges for the Court. Discovery was subject to a protective order intended to limit distribution of such materials. Crim. Dkt. 460. Before the first trial, the Court empaneled an anonymous jury based on information the government provided of attempted witness tampering and intimidation. Crim. Dkt. 754. Nonetheless, the first attempt to try this cause ended in a mistrial 0when the Court learned that some of the defendants had improperly obtained juror information. Dkt. 803.

The second, successfully-completed jury trial began on July 30, 2019. Crim. Dkt. 834. Mr. Carroll became a cooperating witness for the government after he pled guilty. Crim. Dkt. 915, p. 194. Regarding Mr. Atwater, Mr. Carroll testified that in the four-to-five months before his arrest in November 2017, he had been providing methamphetamine to Mr. Atwater a couple times per

3

week, in the amount of one to twelve ounces each time. *Id.* at p. 189. The transactions involved an approximate 50/50 mix of Mr. Atwater paying cash to Mr. Carroll at the time of delivery, and Mr. Carroll "fronting" the drugs to Mr. Atwater on credit. *Id.* Before this time frame, Mr. Carroll often sold marijuana, but not methamphetamine, to Mr. Atwater. *Id.* at pp. 188-89.

During direct examination, Mr. Carroll testified that when he was arrested and first interviewed by the FBI in November 2017, he told the agent that he was not involved with Richard Grundy but that such statement was false. *Id.* at p. 193. Mr. Carroll's plea agreement was introduced into evidence and the AUSA questioned him about the benefit he received in exchange for his plea agreement and agreeing to testify on the government's behalf. *Id.* at pp. 195-96.

Also during Mr. Carroll's testimony, the government introduced to the jury and Mr. Carroll discussed and explained the lingo used during a number of wiretapped phone calls or text messages between him and Mr. Atwater in July and August 2017, arranging deliveries to Mr. Atwater for the following amounts of methamphetamine:

- July 16 – 2 ounces (Crim. Dkt. 915 at pp. 62-63)
- July 22 – 1 ounce (*Id.* at 70-71)
- July 24 – 1 ounce (*Id.* at 73-74)
- July 24 (again) – 11 ounces (*Id.* at 75)
- July 25 – 1 ounce (*Id.* at 81)
- July 26 – 2 ounces (*Id.* at 85-86)
- July 27 – 1 ounce (*Id.* at 89)
- August 1 – 1 ounce (*Id.* at 108)
- August 1 (again) – 2 ounces (*Id.* at 109)
- August 4 – 10 ounces (*Id.* at 118)

- August 6 – 1 ounce (*Id.* at 127)

- August 6 (again) – 1 ounce (*Id.* at 127-28)

- August 10 – 12 ounces (*Id.* at 147-48)

The above amounts total 46 ounces.

During Mr. Moudy's cross-examination of Mr. Carroll, he focused primarily on whether the two were actually only dealing in marijuana, not methamphetamine, during the time in question. Crim. Dkt. 927, pp. 11-22. Mr. Moudy did not attempt to play a video recording of Mr. Carroll's original statement to the FBI to the jury.

On the seventh day of trial, well beyond the time limit for such motions imposed by the Court, Mr. Moudy moved to suppress the evidence obtained from the search of his residence. Crim. Dkt. 844 at p. 2; 943 at p. 103. Mr. Moudy argued that probable cause to search the residence was lacking, and that the search warrant was based on stale information by the time it was executed. Dkt. 943 at pp. 103, 134. After receiving evidence and argument on the merits of the motion, the Court denied it on the merits. *Id.* at pp. 136-138.

The jury found Mr. Atwater guilty of all three charges against him. Dkt. 863. The probation department prepared a presentence report stating in part that the wiretap evidence corroborated Mr. Carroll's testimony that Mr. Atwater received 47 ounces of methamphetamine from Mr. Carroll. Dkt. 1068 at ¶ 15. The probation department also estimated, based on Mr. Carroll's testimony of having provided 1-2 ounces of methamphetamine to Mr. Atwater weekly for 4-5 months, that Mr. Atwater would have received approximately 71 ounces of methamphetamine from Mr. Carroll. *Id.* at ¶ 18. This, plus the approximately one-half ounce recovered during the search of Mr. Atwater's residence, would convert to over 2 kilograms of methamphetamine and a Sentencing Guidelines base offense level of 36. U.S.S.G. § 2D2.2(c)(2).

At sentencing, Mr. Moudy objected to the calculation that Mr. Atwater received 71 ounces of methamphetamine as speculative. After hearing argument from both sides, the Court stated:

> The Court is concerned that – not that the method of estimate is wrong, but just that it is not – is there any evidence you can point to at trial, other than Carrol's testimony, that can put more drugs in his hands or a specific quantity of drugs in his hands other than – it is very specific what is in Paragraph 14 [of the presentence report, dkt. 1068], and I accept all that as proven beyond a reasonable doubt to the jury. But other than that, is there any trial testimony that you can point to that puts specific quantities in his hands from Carroll?

Crim. Dkt. 1206 at p. 8. When the AUSA was unable to direct the Court to such evidence, it concluded for sentencing purposes that the amount of methamphetamine Mr. Atwater possessed with intent to distribute was the 47 ounces corroborated by the wiretap evidence, plus the one-half ounce found at his residence. *Id.* at pp. 9-10. This converted to approximately 1.35 kilograms, and a Sentencing Guidelines base offense level of 34. U.S.S.G. § 2D2.2(c)(3).[2] The Court also agreed that Mr. Atwater was entitled to a "minor role" Sentencing Guidelines reduction, but ultimately determined that an above-Guidelines sentence was warranted for Mr. Atwater and imposed a sentence of 18 years (or 216 months). Crim. Dkt. 1206 at p. 22.

Mr. Atwater and his co-defendants Mr. Grundy, Mr. Moseby, Mr. Neville, Mr. Beasley, and Mr. Gilberto Vizcarra-Millan[3] appealed. For his part, Mr. Atwater, continuing to be represented by Mr. Moudy, argued that (1) the Court improperly denied his motion to suppress; and (2) there was

---

[2] The Court acknowledges there may be a slight discrepancy between the evidence at trial and the presentence report's calculation that the wiretaps corroborated Mr. Atwater's obtaining 47 ounces of methamphetamine. In particular, it appears that Mr. Atwater may have received only 11 ounces of methamphetamine on the second occasion on July 24, not 12, for a total of 46 ounces. This, however, would only result in a lowering of the kilogram amount to 1.32, or not nearly enough to make any difference under the Sentencing Guidelines, which have a 500-gram cutoff for lowering the base offense level to 32. U.S.S.G. § 2D2.2(c)(4).

[3] Mr. Vizcarra-Millan pled guilty.

insufficient evidence to support his conspiracy conviction. *United States v. Vizcarra-Millan*, 15 F.4th 473, 500, 506 (7th Cir. 2021). Regarding the search of Mr. Atwater's residence, the Seventh Circuit noted that this Court ruled on the merits of the motion to suppress despite its being untimely, and it also analyzed the issue on the merits. *Id.* at 500. The Seventh Circuit affirmed this Court's ruling. *Id.* at 501-02. Regarding the sufficiency of the evidence, the Seventh Circuit rejected Mr. Atwater's argument that he merely had a "buyer-seller" relationship with Mr. Carroll rather than an agreement to distribute drugs. *Id.* at 506-08. The Seventh Circuit pointed to Mr. Carroll's testimony estimating "that Atwater bought methamphetamine a 'couple times a week' over the course of four or five months" and that many of these transactions involved Mr. Atwater being "fronted" the drugs, that is receiving them on credit. *Id.* at 508. "If the jurors believed Carroll's testimony—and we must presume they did—then they could infer beyond a reasonable doubt that Atwater agreed to distribute drugs on behalf of Carroll." *Id.* On September 20, 2021, Mr. Atwater's convictions and sentence were affirmed, as were all of his co-defendants', save Mr. Beasley, who had two of his convictions reversed. *Id.* at 514.

Mr. Atwater filed his § 2255 motion for relief on August 22, 2022. Dkt. 1. The motion alleged: (1) Mr. Moudy was ineffective at trial for not filing a timely motion to suppress; (2) Mr. Moudy was ineffective at trial for not introducing Mr. Carroll's original FBI interview into evidence; (3) Mr. Moudy was ineffective on appeal for failing to rebut the government's argument regarding Mr. Carroll's testimony against him; and (4) the government engaged in "prosecutorial misconduct" by relying on Mr. Carroll's testimony at trial and on appeal. After the United States filed its response and Mr. Atwater his reply, he filed two motions requesting documents from his criminal proceedings, including the original search warrant and probable cause affidavit and copies of Mr. Carroll's original FBI interview and "proffer statements" to the AUSA when he agreed to

7

plead guilty. The Court denied these motions based on a failure to show good cause for the requested discovery and out of security concerns for providing such documents to Mr. Atwater personally.[4] Dkt. 21. However, the Court granted Mr. Atwater time to file a belated reply, which he did. Dkt. 22. This matter is now ripe for decision.

### III. Discussion

#### A. Ineffective Assistance of Counsel

A petitioner claiming ineffective assistance of counsel bears the burden of showing (1) that counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011). If a petitioner cannot establish one of the *Strickland* prongs, the Court need not consider the other. *Groves v. United States,* 755 F.3d 588, 591 (7th Cir. 2014). To satisfy the first prong of the *Strickland* test, a petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt v. United States,* 574 F.3d 455, 458 (7th Cir. 2009). The Court must then consider whether in light of all the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id.* To satisfy the prejudice component, a petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

#### 1. Motion to Suppress

Mr. Atwater first contends that Mr. Moudy was ineffective for not timely filing a motion to suppress. But, as discussed above, both this Court and the Seventh Circuit fully addressed the motion to suppress on the merits despite its untimeliness. In fact, the Seventh Circuit expressly

---

[4] To the extent Mr. Atwater questions this ruling in his reply brief, the Court reaffirms its ruling for the reasons stated.

stated, "[r]uling on the substance of such [untimely] motions can avoid later claims for ineffective assistance of counsel premised on motions that would not have prevailed." *Vizcarra-Millan*, 15 F.4th at 500 n.6. And as the Court previously noted when denying Mr. Atwater's motion for copies of the probable cause affidavit and search warrant, Mr. Moudy "cannot be found ineffective for failing to challenge the warrant under these circumstances." Dkt. 21 at p. 5 (citing *Robinson v. United States*, No. 03-CV-1112, 2004 WL 324878, at *4 (S.D.N.Y. Feb. 19, 2004) (finding baseless ineffective assistance of counsel claim in § 2255 motion where petitioner's "attorneys in fact raised the issues . . . that are the basis for his petition"); *Strahn v. United States*, No. 10-0950-DRH, 2012 WL 5380331, at *4 (S.D. Ill. Oct. 31, 2012) (defense counsel "cannot be faulted for not doing something he clearly did.")).

At a minimum, Mr. Atwater would need to direct the Court to some glaring deficiency on Mr. Moudy's part in how he argued the motion to suppress before this Court and the Seventh Circuit. He has not done so and instead merely restates arguments about the adequacy of probable cause and staleness, which both this Court and the Seventh Circuit already fully considered and rejected. There has been no showing of changed circumstances of fact or law, and this Court declines to "reconsider an issue which was already decided on direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995).

In his reply brief, Mr. Atwater suggests for the first time that the search warrant should have been challenged under *Franks v. Delaware*, 438 U.S. 154 (1978), for allegedly being issued based on an affidavit containing false information. The injection of completely new arguments into a § 2255 reply brief, of which the government had no notice when it filed its response, generally should be considered waived. *See Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998) (noting that completely new arguments in a § 2255 reply brief should be considered waived,

9

even if the petitioner is pro se). "The reason for this rule of waiver is that a reply brief containing new theories deprives the respondent of an opportunity to brief those new issues." *Id.* In any case, Mr. Atwater does not clearly indicate what information in the probable cause affidavit would have been false. He might be suggesting that it was based in part on Mr. Carroll's testimony, but it was not. Putting aside the question of whether Mr. Carroll would have provided false testimony in a probable cause affidavit, Mr. Carroll was not yet a cooperating witness at that time and the affidavit was based primarily on wiretapped phone calls, and not at all on any testimony by Mr. Carroll.

Mr. Atwater has not shown that Mr. Moudy performed deficiently with respect to the motion to suppress and therefore he has not demonstrated he received ineffective assistance of counsel on this point.

### 2. Impeachment of Mr. Carroll

Next, Mr. Atwater contends that Mr. Moudy should have played Mr. Carroll's initial recorded FBI interview for the jury, in which Mr. Carroll denied any involvement with the Grundy network. As noted, Mr. Carroll's about-face between the time of his initial FBI interview and his trial testimony was disclosed to the jury by the government, as were the terms of Mr. Carroll's plea agreement and the benefit he received by pleading guilty and choosing to testify as a government witness. So, Mr. Atwater is taking issue with Mr. Moudy's tactical decision to challenge Mr. Carroll's credibility on cross-examination by focusing upon whether Mr. Atwater and Mr. Carroll were actually talking about marijuana and not methamphetamine during the numerous wiretapped phone conversations and text messages between the two from July and August 2017, rather than rehashing and emphasizing his original FBI interview.

"Trial tactics are a matter of professional judgment, and [courts] will not play 'Monday morning quarterback' when reviewing claims that an attorney rendered constitutionally deficient

10

representation in making decisions on how best to handle a case." *United States v. Malone*, 484 F.3d 916, 920 (7th Cir. 2007). There is a presumption under *Strickland* "that choices made by an attorney as to what evidence should be presented, what issues deserve the most focus, and so on, are strongly presumed to be tactical decisions and therefore, objectively reasonable." *Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004). "Impeachment strategy falls within this category of trial tactics." *Tackett v. Trierweiler*, 956 F.3d 358, 374 (6th Cir. 2020).

This is not a situation in which Mr. Carroll's prior inconsistent out-of-court statements were never disclosed to the jury. They were fully disclosed, by the government, before Mr. Moudy cross-examined him. Mr. Atwater has not shown that Mr. Moudy's tactical decision to thoroughly cross-examine Mr. Carroll focusing on a different issue was unreasonable. That the jury ultimately decided to credit Mr. Carroll's testimony does not mean that Mr. Moudy provided ineffective assistance on this point. *See Orr v. Warden*, No. 2:16-CV-039-TLS, 2018 WL 4076984, at *6 (N.D. Ind. Aug. 27, 2018) ("The jury was informed that Foster was receiving a substantial benefit in exchange for his testimony. Thus, the jury knew of Foster's potential motivation and bias. Orr has not explained how counsel's failure to impeach him differently constitutes ineffective assistance of counsel under *Strickland*.").

### 3. Appellate Briefing of Sufficiency Issue

Mr. Atwater contends that Mr. Moudy provided ineffective assistance on appeal by failing to correct the alleged "false assertion" of the government before the Seventh Circuit that Mr. Atwater had been involved in drug dealing with Mr. Carroll for four to five months. The Seventh Circuit cited this testimony when affirming Mr. Atwater's conspiracy conviction. *Vizcarra-Millan*, 15 F.4th at 508. Mr. Atwater argues that Mr. Moudy should have brought to the Seventh Circuit's attention this Court's discussion and decision at sentencing to not agree to a Sentencing Guidelines

11

calculation based on an amount of methamphetamine dealing between Mr. Atwater and Mr. Carroll that was not directly corroborated by the wiretap evidence gathered over the course of several weeks, rather than four to five months. If Mr. Moudy had done so, Mr. Atwater believes the Seventh Circuit would have agreed to vacate his conspiracy conviction, as it vacated Mr. Beasley's conspiracy conviction.

On this point, assuming without deciding that Mr. Moudy should have brought this Court's sentencing discussion to the Seventh Circuit's attention, Mr. Atwater has not shown that he was prejudiced by that omission. When resolving the prejudice inquiry on a claim of ineffective assistance of appellate counsel, the sole issue is "whether there is a reasonable probability that raising the issue would have made a difference in the outcome of the appeal." *Howard v. Gramley*, 225 F.3d 784, 791 (7th Cir. 2000).

The Court is confident that the Seventh Circuit would have viewed the discussion at sentencing regarding the quantity of drugs Mr. Atwater was proven to have dealt as strictly limited to that issue, and not relevant to the issue of how long Mr. Atwater was part of the Grundy network conspiracy. The Court and the parties agreed at sentencing that the jury was entitled to accept Mr. Carroll's testimony in full with respect to the charges of which it found Mr. Atwater guilty. The Sentencing Guidelines issue was a separate matter within the Court's discretion to calculate. *See United States v. Magana*, 188 F.3d 1173, 1205 (7th Cir. 1997) ("[t]he sentencing judge determines the amount of narcotics to attribute for sentencing purposes . . . ."). The jury here did not have to make that calculation, aside from having to find that Mr. Atwater dealt in more than 50 grams of methamphetamine, which was much more than corroborated by the wiretap evidence.

As the Seventh Circuit noted in Mr. Atwater's appeal, it "review[ed] the evidence in the light most favorable to the government." *Vizcarra-Millan*, 15 F.4th at 506. More generally, the

12

Seventh Circuit has "said time and again, [i]t is for the jury—not the court of appeals—to judge the credibility of witnesses, and attacks on witness credibility are insufficient to sustain a challenge to the sufficiency of the evidence." *United States v. Elder*, 840 F.3d 455, 460 (7th Cir. 2016). The Seventh Circuit credited Mr. Carroll's testimony in full as to all of the defendants, including Mr. Beasley. Its reasoning for vacating Mr. Beasley's conspiracy conviction was that there was only evidence of him being involved in the operation for "a few weeks," of Mr. Carroll only providing a single "fronting" or possible "discount" to Mr. Beasley on his obtaining of methamphetamine during that time, and of Mr. Carroll once "encouraging" Mr. Beasley. *Vizcarra-Millan*, 15 F.4th at 510-11. The Seventh Circuit concluded this evidence was "notably weaker" than the evidence against Mr. Atwater. *Id.* at 510.

With respect to Mr. Atwater, the Seventh Circuit said that it "must presume" that the jurors believed Mr. Carroll's testimony. *Id.* at 508. And that testimony demonstrated Mr. Atwater's months-long participation in the conspiracy, evidenced by multiple large-scale drug acquisitions by Mr. Atwater and with many of those acquisitions being on credit, not just one. The Court concludes there is no reasonable probability that the Seventh Circuit would have reversed Mr. Atwater's conspiracy conviction if Mr. Moudy had emphasized the Court's sentencing discussion to the Seventh Circuit. Mr. Atwater has not established that Mr. Moudy provided ineffective assistance of counsel on appeal.

### B. Prosecutorial Misconduct

Finally, Mr. Atwater contends the United States Attorney engaged in prosecutorial misconduct by its reliance on Mr. Carroll's testimony. It is not entirely clear whether Mr. Atwater intended to focus his arguments on the use of Mr. Carroll's testimony at trial or in support of

affirming his convictions on appeal. In either case, Mr. Atwater has not shown he is entitled to relief on this issue.

Mr. Atwater did not make this argument at trial or on direct appeal, so it is procedurally defaulted in this § 2255 action. *See McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016). To avoid procedural default, a § 2255 petitioner must show either (1) cause and prejudice or (2) actual innocence. *Id.* Mr. Atwater does not directly argue either ground for avoiding default of this issue.

Even if Mr. Atwater is suggesting that Mr. Moudy's deficient performance was the "cause" of not raising this issue at trial or on appeal, at the end of the day he still has not shown actual prejudice because of this failure. "When the defendant argues that the government allegedly used perjured testimony, to warrant setting the verdict aside and ordering a new trial, the defendant must establish that: (1) the prosecution's case included perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there is a reasonable likelihood that the false testimony could have affected the judgment of the jury." *Shasteen v. Saver*, 252 F.3d 929, 933 (7th Cir. 2001). "'Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony.'" *Id.* (quoting *United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990)). Even more specifically, "a challenge to evidence through another witness or prior inconsistent statements is insufficient to establish prosecutorial use of false testimony." *United States v. Martin*, 59 F.3d 767, 770 (8th Cir. 1995) (cleaned up).

Mr. Atwater continues to insist that Mr. Carroll must have perjured himself at trial, solely because his testimony conflicted with his pretrial statements to the FBI. This does not show that that Mr. Carroll perjured himself, let alone that the government engaged in misconduct by knowingly using perjured testimony. The jury could have chosen to reject Mr. Carroll's testimony

after being fully apprised of his pretrial statements and subsequent plea deal, and/or on the basis of Mr. Moudy's cross-examination, but it did not.

Mr. Atwater has not shown cause *and* prejudice for failing to raise this issue earlier. For similar reasons, Mr. Atwater's continued challenges to Mr. Carroll's credibility do not establish that he is actually innocent. The prosecutorial misconduct claim is procedurally defaulted.

### IV.  Conclusion

For the reasons explained in this Order, Mr. Atwater is not entitled to relief on his § 2255 motion. He did not receive ineffective assistance of counsel at trial or on appeal, and his freestanding claim of prosecutorial misconduct is procedurally defaulted. Moreover, Mr. Atwater's factual claims would not warrant relief, or they lack sufficient detail to warrant holding an evidentiary hearing to resolve them.

Accordingly, Mr. Atwater's motion for relief pursuant to § 2255 is **DENIED** and this action is dismissed with prejudice.  Judgment consistent with this Order shall now issue and the Clerk shall **docket a copy of this Order in No. 1:17-cr-00222-JMS-TAB-6.**  The motion to vacate, Crim. Dkt. [1513], shall also be **terminated** in the underlying criminal action.

### V.  Denial of Certificate of Appealability

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition. Rather, he must first request a certificate of appealability. *See Miller–El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 Proceedings, and 28 U.S.C. § 2253(c), the Court finds that Mr. Atwater has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling."

*Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

    **IT IS SO ORDERED.**

Date: 10/21/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

DEREK ATWATER
16024-028
PEKIN - FCI
PEKIN FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 5000
PEKIN, IL 61555